UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LILLIAN J. CONSTANTAKIS by
CLARENCE R. CONSTANTAKIS,
Her Special Conservator,

       Plaintiff,

v.                                        Case No. 07-15350
                                        Hon. Sean F. Cox

LAW OFFICES OF PATRICIA LESTER
CLOWDUS, P.C.; and PATRICIA CLOWDUS,

       Defendants.

_____

## OPINION AND ORDER

     This matter is before the Court on Defendants' Motion for summary judgment. Although

Defendants style the motion as one for summary judgment, because it is based on an alleged lack

of personal jurisdiction, it is properly treated as a motion to dismiss under Fed.R.Civ.P. 12

(b)(2). The parties have fully briefed the issues. Pursuant to E.D.Mich. LR 7.1, the Court

declines to hear oral argument. For the following reasons, the Court **GRANTS** Defendants'

Motion to dismiss for lack of personal jurisdiction in accordance with Fed.R.Civ.P. 12(b)(2).

## I.    BACKGROUND

     This action arises out of alleged legal malpractice. On August 17, 2006, Plaintiff, Lillian

Constantakis ("Plaintiff") and her husband, Clarence Constantakis ("Constantakis")[1], traveled

from their home in Michigan to Colorado to visit their daughter Paula Young ("Young").

_____

[1]Clarence Constantakis is also the Special Conservator for Plaintiff.

Plaintiff became ill during her visit. Constantakis returned home while Young cared for Plaintiff during her convalescence.

According to Constantakis, Young attempted to isolate her mother from him and the rest of her family. While staying with Young, Plaintiff met with Defendants. On October 26, 2006, Defendants sent Plaintiff an "Estate Planning Retainer" letter to an address in Colorado. The scope of the proposed representation was to formulate an estate plan. Plaintiff signed the letter on November 9, 2006.

According to Constantakis, during this time, Young permitted limited communication with Plaintiff. Constantakis further claims that Plaintiff wanted to return home to Michigan. Constantakis filed a petition for guardianship and conservatorship over Plaintiff in Wayne County Probate Court. His petition was granted on November 6, 2006. On December 8, 2006, Constantakis filed a petition for appointment of guardian and to transfer proceedings to Michigan in a Colorado district court. His petition was set for hearing on January 8, 2007.

Constantakis flew to Colorado to retrieve Plaintiff, and she returned to Michigan with him on December 19, 2006. Constantakis withdrew his petition before the Colorado court on December 20, 2006. Meanwhile, Defendants filed an appearance in the Colorado proceedings on December 20, 2006. Plaintiff notified Defendants several times that she no longer wanted their representation.

Nonetheless, on January 11, 2007, Defendants filed a *Motion for Reconsideration of Order Granting Motion to Withdraw Petition for Appointment of Guardian (Adult) and Request to Vacate Hearing Set for January 8, 2007* in the Colorado action. Plaintiff again informed Defendants that she did not want them to represent her and that they were not authorized to file

anything on her behalf. Questioning her competence to make such a decision, Defendants

continued to pursue the action, including making filings on Plaintiff's behalf. Defendants sent

correspondence to Plaintiff in Michigan. Defendants also hired the Michigan law firm Dykema

Gossett to represent Plaintiff in Michigan, in accordance with a Colorado court order.

Defendants also presented a claim for $20,248.30 against Plaintiff's estate. The Wayne County

Probate Court denied the claim and told Defendants they would have to file an action in

Michigan or begin collection proceedings. Defendants did not pursue the claim further.

On November 9, 2007, Plaintiff, through her Special Conservator and husband Clarence

Constantakis, filed a Complaint in Wayne County Circuit Court alleging: (1) professional

malpractice against Defendant Patricia Clowdus; (2) professional malpractice against Defendant

law firm Law Offices of Patricia Lester Clowdus, P.C.; and (3) violation of the Colorado

Consumer Protection Act against both Defendants. Plaintiff also requests exemplary damages.

Defendants removed the action to this Court on December 14, 2007. On February 5, 2008,

Defendants filed the instant Motion to dismiss based on a lack of personal jurisdiction.

## II.    STANDARD OF REVIEW

"The party seeking to assert personal jurisdiction bears the burden of demonstrating that

such jurisdiction exists." *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). When ruling on

a jurisdictional motion to dismiss, the court considers the pleadings and affidavits in a light most

favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

The plaintiff must make a prima facie showing of jurisdiction. *Id.* Further, the court does not

weigh the controverting assertions of the party seeking dismissal. *Id.* However, if the written

submissions raise disputed issues of fact that would defeat jurisdiction or seem to require

determinations of credibility, the court has the discretion to order an evidentiary hearing. *Id.* The court may also order discovery broad enough to allow the parties to prepare for the evidentiary hearing. *Id.* At the evidentiary hearing, the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id.*

## III.   ANALYSIS

As a preliminary matter, an evidentiary hearing is not warranted in this case. The parties do not dispute the facts, only whether those facts justify an exercise of personal jurisdiction.

"A federal court may only exercise personal jurisdiction in a diversity case if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment." *Youn*, 324 F.3d at 417. Personal jurisdiction may be either general or specific. *Intera Corporation v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). "General jurisdiction exists when a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.* "An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state." *Id.* In this case, Plaintiff only asserts specific personal jurisdiction.

"A court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the state's long-arm statute and constitutional due process requirements." *Id.* The court's exercise of jurisdiction comports with due process "when the defendant has sufficient minimum contacts such that traditional notions of fair play and substantial justice are not offended." *Id.* at 615-616 (citation omitted). "When a state's long-arm statute reaches as far

as the limits of the Due Process Clause, the two inquiries merge and the court need only

determine whether the assertion of personal jurisdiction violates constitutional due process." *Id.*

at 616 (citing *Aristech Chem. International v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir.

1998)). Michigan's limited personal jurisdiction provisions extends the state's jurisdiction to the

limits permitted by due process requirements, thus this Court only performs one inquiry under

the Due Process Clause. *Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1150 (6th Cir. 1990);

and *Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003)[2]

The Sixth Circuit has set forth a three part test for determining whether, consistent with

due process, a court may exercise specific personal jurisdiction: (1) the defendant must

purposefully avail himself of the privilege of acting in the forum state; (2) the cause of action

must arise from the defendant's activities there; and (3) the acts of the defendant or

consequences caused by the defendant must have a substantial enough connection with the forum

state to make the exercise of jurisdiction over the defendant reasonable. *Youn*, 324 F.3d at 418

(citing *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.

1968)).

### A.    Purposeful Availment

Purposeful availment is more than a passive availment of the forum state's opportunities,

it is a deliberate undertaking. *Bridgeport Music*, 327 F.3d at 478. "The purposeful availment

requirement is satisfied when the defendant's contacts with the forum state proximately result

from actions by the defendant *himself* that create a substantial connection with the forum State,

---

[2]For Michigan's limited personal jurisdiction statutes see MCL § 600.705 (individuals), and MCL § 600.715 (corporations).

5

and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* (citations omitted)(emphasis original). "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person." *Id.* (citation omitted). "The emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Id.*

Plaintiff identifies four contacts to establish jurisdiction. Plaintiff alleges Defendants: (1) solicited a Michigan client; (2) contacted and corresponded with the client, her husband, attorneys in Michigan, and the Wayne County Probate Court; (3) hired and paid Michigan attorneys to act as Defendants' agent in Michigan court; and (4) submitted a claim to the Wayne County Probate Court for their services. [Response, p.5].

As to the first contact, it is unclear whether Defendants solicited Plaintiff's business or whether Plaintiff was brought to Defendants by Young. Nonetheless, it is undisputed that Plaintiff first had contact with Defendants in Colorado and signed the retainer letter in Colorado. The retainer letter is addressed to Plaintiff at a Colorado address. Defendants agreed to provide estate planning services. In providing that service, undoubtedly, Defendants would have had to consider Michigan law in their planning and have relied on documents generated in Michigan. However, this does not translate into a contact by the Defendants with the state itself. The fact that Plaintiff was a Michigan resident when she engaged Defendants' services is irrelevant for purposes of determining jurisdiction. See *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997)(citation omitted)("an individual's contract with an out-of-state party

alone cannot automatically establish minimum contacts"). See also *Sawtelle v. Farrell*, 70 F.3d 1381, 1392 (1st Cir. 1995)("The mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required."); and *Trinity Industries, Inc. v. Myers & Assoc. Ltd*, 41 F.3d 229, 230 (5th Cir. 1995)("The bare existence of an attorney-client relationship is not sufficient [to establish minimum contacts].").

Defendants' correspondence incident to their representation of Plaintiff is also insufficient contact to create a substantial connection to Michigan. In *Sawtelle*, the plaintiff was a New Hampshire resident who filed a legal malpractice action in a federal court located in New Hampshire. *Sawtelle*, 70 F.3d 1381. The alleged malpractice occurred in a wrongful death action brought in Florida. The plaintiff originally contacted a California law firm regarding representation. The California firm facilitated representation through its Washington, D.C. affiliate. Because the action was to be filed in Florida, the Washington, D.C. firm engaged the services of a Florida firm to act as local counsel in the wrongful death action. During the course of the representation, numerous letters and telephone calls passed between the parties. The Florida attorney also contacted an attorney in New Hampshire for advice on the distribution of funds. Additionally, the retainer agreement contained a lien on any sum the plaintiff's recovered. After the plaintiff settled the wrongful death action, he discovered that another claimant settled with the same defendant for a much higher amount. The plaintiff filed a malpractice action against the Washington, D.C. and Florida counsel in a federal court located in New Hampshire. The district court dismissed the action for lack of personal jurisdiction. The *Sawtelle* court affirmed the ruling of the district court, finding there was no personal jurisdiction.

The *Sawtelle* court began by considering whether the action arose out of the defendants'

activities in New Hampshire.  The court found it did not:

> A review of all the allegedly negligent actions of the defendants preceding the
> injury indicates numerous non-forum decisions reached by the defendants in
> Virginia and Florida, but not in New Hampshire.  It was the defendants'
> investigation, in Florida and Virginia, which informed their judgment about the
> amount and propriety of the proposed settlement.  In short, it was the aggregate of
> the defendants' allegedly negligent acts and omissions which caused the Florida
> injury, and the out-of-forum negligence was the effective cause.

*Sawtelle*, 70 F.3d at 1390.  The court concluded that "the gravamen of the Sawtelles' claim is

that they suffered in New Hampshire the 'effects' of the defendants' negligence committed

elsewhere."  *Id.*  The court went on to find that the defendants also did not purposefully avail

themselves of the privilege of conducting business in New Hampshire.  The court noted that the

defendants' activity was limited to communicating with their clients in their home state.  The

litigation occurred outside of New Hampshire.  Further, the court noted "although the plaintiffs

required assistance of New Hampshire counsel ... the defendant law firms themselves performed

no legal services in New Hampshire in that regard."  *Id.* at 1393.  Lastly, the court indicated that

the lien was a transitory obligation, and even without it, the plaintiffs' had a contractual

obligation to pay the defendants' fees.  None of these contacts were enough to establish

purposeful availment.

In a similar case, *Austad Company v. Pennie & Edmonds*, 823 F.2d 223 (8th Cir. 1987),

the court also found no personal jurisdiction.  In *Austad*, the plaintiff, a South Dakota resident,

retained a New York law firm to represent it in a patent case in Maryland.  In the course of the

litigation, the defendant sent an associate and a law clerk to South Dakota for document review;

made numerous phone calls to South Dakota; used a courier to deliver to South Dakota at the plaintiff's expense; and sent monthly billings to the plaintiff in South Dakota. The court found the contacts were not sufficient to confer personal jurisdiction over the New York law firm in an action filed against it by the plaintiff in South Dakota. The court noted that the defendant law firm did not maintain an office in South Dakota, none of its attorneys resided there, none of its attorneys were licensed to practice law in South Dakota, the defendant had never advertised or solicited business in South Dakota, and did not seek the plaintiff out as a client. Finally, the court noted that the actions giving rise to the plaintiff's suit took place in Maryland, not South Dakota. The court affirmed the finding of the district court, that there was no personal jurisdiction.

As in *Sawtelle* and *Austad*, Defendants' contacts with Michigan were only in furtherance of the representation Plaintiff agreed to in Colorado. The correspondence pertained to Defendants' representation of Plaintiff, and the bill submitted was for Defendants' fees incurred in that representation. The hiring of an independent Michigan law firm to represent Plaintiff's interests in Michigan does not amount to a purposeful availment of the privileges and laws of Michigan by Defendants. In this case, Defendants did not reach out beyond Colorado to create a relationship. Plaintiff formed the agreement with Defendants in Colorado. Further, while the Court is not making any judgments on whether Defendants had the right to continue the representation, any correspondence between the parties was in furtherance of the representation contracted for in Colorado. Lastly, the relationship between the parties was not a continuing obligation. According to the retainer, the scope of the representation was limited to formulating an estate plan and procuring a seasonal home in Colorado. Presumably, once those objectives

were achieved, the relationship between the parties would have been at an end. Consequently, the correspondence between the parties were a mere collateral relation to Michigan. See *LAK,* 885 F.2d at 1300 (internal citation omitted)("There is a difference between ... a mere collateral relation to the forum state, and the kind of substantial relationship with the forum state that invokes, by design, the benefits and protections of its laws."). Thus, the contacts alleged by Plaintiff are insufficient to establish purposeful availment.

In addition, Plaintiff contends that Defendants "have already been under the jurisdiction of Michigan courts" because Defendants submitted a claim for fees against Plaintiff's estate. [Response, p.10]. The only jurisdiction argued for in this case is specific personal jurisdiction. Thus, if the submission of the claim were enough to confer specific jurisdiction over Defendants in Michigan, it only pertains to the fees, not alleged professional negligence in the Colorado litigation or alleged violations of the Colorado Consumer Protection Act.

### B.    Arising Out Of

In order to satisfy this criterion, the cause of action of whatever type, must have a substantial connection with the defendant's in-state activities. *Third National Bank v. Wedge Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989). "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact."

As mentioned above, in *Sawtelle*, the court found the legal malpractice action did not arise from the defendants' contact with the forum state because the litigation and the decision making that drove the litigation (and hence the alleged malpractice) did not occur in the forum. *Sawtelle*, 70 F.3d at 1390.

The reasoning of *Sawtelle* is applicable here. Plaintiff's professional negligence claim, brought under Colorado law, did not arise from Defendants' contacts with Michigan. Rather, Plaintiff's claim is based on Defendants continued representation of Plaintiff in the Colorado proceeding, even in spite of Plaintiff's requests to the contrary. Plaintiff alleges that Defendant continued to act in the Colorado proceeding against her wishes, causing orders to be issued by the Colorado court. [Complaint, ¶30]. Plaintiff also alleges Defendants failed to seek dismissal of the Colorado action and continues to pursue the action. [Complaint, ¶36]. Plaintiff claims that these and other acts violated the standard of care and practice under Colorado law. [Complaint, ¶¶ 43,46]. Plaintiff does not allege professional malpractice occurred in Michigan in violation of Michigan law.[3] The act of representing Plaintiff in Colorado, naturally, occurred in Colorado. Further, the decision to ignore Plaintiff and Constantakis' requests to terminate the representation and terminate the Colorado proceeding occurred in Colorado. It is these actions that give rise to Plaintiff's claim. Thus, Plaintiff's claim does not arise from Defendants' incidental contacts with Michigan.

### C.      Reasonableness

In light of this Court's findings that Defendants' contacts with Michigan were not sufficient to create a substantial connection with the state, and that Plaintiff's claims do not arise out of the contacts with Michigan, the exercise of jurisdiction over Defendants in Michigan is not reasonable.

### IV.      CONCLUSION

---

[3]Indeed, Defendants are not licensed to practice law in Michigan. To the extent Plaintiff was represented in Michigan by Dykema Gossett, a Michigan firm hired by Defendants, Plaintiff does not allege professional negligence in violation of Michigan law.

For the foregoing reasons, this Court **GRANTS** Defendants' Motion to dismiss for lack of personal jurisdiction in accordance with Fed.R.Civ.P. 12(b)(2).

**IT IS SO ORDERED.**

<u>**S/Sean F. Cox**</u>
**Sean F. Cox**
**United States District Judge**

**Dated:  April 14, 2008**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on April 14, 2008, by electronic and/or ordinary mail.**

<u>**S/Jennifer Hernandez**</u>
**Case Manager**